# McKinnon *v.* Pike County Guano Co.

### Bill in Equity for Account and Receiver.

1. *Account of collaterals, against agent or trustee; receiver.*—Under a written contract between a manufacturer of commercial fertilizers and a dealer in these articles, by which the former agrees to furnish specified quantities to the latter for sale, with a stipulation that the proceeds of sale are to be first applied in payment of his indebtedness, and all notes taken from purchasers to be delivered to the former as collateral security; if the dealer makes default, failing to pay over moneys collected, and refusing to deliver the notes taken from purchasers, and is insolvent, the manufacturer may maintain a bill in equity against him for an account, and have a receiver appointed to take possession of the collaterals and collect them.

[McKinnon v. Pike County Guano Co.]

APPEAL from the Chancery Court of Bullock.

Heard before the Hon. JOHN A. FOSTER.

The bill in this case was filed on the 1st February, 1889, by the Pike County Guano Company, a private corporation organized under the general statutes, against Edw. F. McKinnon; and sought an account of certain commercial transactions between the parties, and a receiver to take possession of and collect certain notes, &c., in the defendant's possession, which were to be held as collateral security for his indebtedness to the complainant, and which he refused to account for or deliver. The contract between the parties, which was made an exhibit to the bill, and which was dated at Troy, December 22d, 1887, was evidenced by a written offer on the part of the complainant, and the defendant's acceptance indorsed on it. The following are the material stipulations of the writing: "We will furnish you" specified quantities of several different kinds of commercial fertilizers, at specified prices, "or as much more as may be mutually satisfactory; to be settled for by you by your notes, due Nov. 1st, Nov. 15th, and Dec. 1st, 1888, payable at Farmers & Merchants Bank, Troy, Alabama; shipments to be made when ordered. We have the right to call on you for your notes in settlement of same, at any time we may desire after shipment. All money for cash sales to be turned in immediately on receipt of it. On May 1st next, or sooner if possible, you agree to deliver to us, or our order, notes of the planters, or other purchasers to whom you may have sold these goods, for the gross amount of the sales of the same, to be held by us as collateral security for the payment of your obligations as above stated; and all of said goods, as well as all proceeds therefrom, are to be held by you in trust for the payment of your notes to us; and further, all proceeds of said goods as collected must be first applied to the payment of your notes, whether the same have matured or not. All contracts subject to approval of the company. The collaterals will be returned to you in ample time for collection."

The bill alleged that large quantities of fertilizers were furnished to the defendant under this contract, most of which he sold to planters and others; that he had collected money on sales for cash, for which he refused to account, and had taken notes from other purchasers, which he refused to deliver to the complainant; and that he was insolvent. The main defense to the bill, presented both by plea and answer, was, that the packages or bags of guano furnished by complainant to defendant were not tagged as required by statute (Code, § 141), and therefore no recovery could be had on the defendant's notes. The chancellor decided this question of fact against

the defendant, and rendered a decree for the complainant; and this decree is assigned as error.

TOMPKINS & TROY, for appellant.

GARDNER & WILEY, *contra*.

STONE, C. J.—During the season of 1887–8, the Pike County Guano Company, a corporation located at Troy, Alabama, sold and shipped to McKinnon, in Bullock county, between two and three hundred tons of fertilizers. The disputed question in this case is, whether or not the fertilizers, when sold and shipped, had tags attached to the sacks or packages, as required by section 141 of the Code of 1886. Of the quantity sold and shipped, as we understand the testimony, about five-ninths was of the brand known as Pike County Guano. The residue was made up of four different brands. The weight of the testimony leaves but little room for doubt that a considerable part of the entire bulk of the sale was properly tagged, although some of the witnesses go so far as to state that none of the sacks had tags attached to them when unloaded from the cars. There is great conflict in the testimony—irreconcilable conflict—and we must be pardoned for doubting the truth of a good deal of it. Courts, like juries, ought to look, and will look at attendant facts, and will give more credit to some witnesses than to others. There is no mathematical rule for determining the credibility of human testimony.

Henderson was the shipping agent, and testified that he shipped all the guano and other fertilizers which gave rise to this suit. He testifies with great positiveness that every package, when shipped, had the proper tag attached to it. McKinnon and the railroad agent at the depot of delivery testify that none of the Pike County guano was tagged when unloaded at the point of destination. Five witnesses, Lewis, Sellers, Braswell, Brooks and Boyd, each gives testimony more or less corroborative of Henderson's version. Several of them testify to seeing tags on Pike County guano, after it had passed from McKinnon's custody. There are two other circumstances tending to corroborate Henderson. McKinnon resold all the fertilizers, save a lot retained and used by himself; and we hear of no complaint from his customers that the packages were not properly tagged. The other corroborating circumstance is, that during the altercations attending the efforts of the Pike County Guano Company to obtain a settlement from McKinnon, we hear of no complaint from

[Pearce v. Jennings.]

him that the fertilizers had been sold to him without proper tags attached.  We concur with the chancellor in holding that this line of defense has failed in the proof.

The original written agreement entered into by McKinnon, in reference to the notes, accounts, property, &c., received by him on the re-sale of the fertilizers, made him the agent and trustee thereof, for the benefit of the Pike County Guano Company, to the extent of the unpaid purchase-money he owed the corporation.  This, supplemented by his insolvency, makes a clear case for equitable interposition. There was no legal remedy adapted to the merits of the demand, because the company's claim was at most only a right to have the collaterals, then held by McKinnon as agent, placed in the hands of a receiver, and applied to the payment of McKinnon's debts.

Affirmed.